## THE HALF MOON.[1]

### JONES v. THE HALF MOON.

(*District Court, E. D. New York. June 15, 1891.*)

MARITIME LIENS—ABANDONMENT—AGREEMENT.

J., holding liens on four lighters owned by H., entered into the following agreement: "In consideration of the payment of $500, * * * we do hereby agree to release the said H., and also the lighters C., H., S., and A., from any such claim as we have on the above to date." Thereafter H. paid on account $200. The lighters being afterwards libeled by various lienors, libelant filed this libel to enforce his lien. On objection by an intervenor, another lienor, *held*, that the above agreement was in legal effect an abandonment of libelant's lien.

In Admiralty. Suit to enforce a lien.
*Alexander & Ash*, for libelants.
*D. D. McKoon*, for mortgagee.

BENEDICT, J. This is an action to enforce a lien against the lighter Half Moon for supplies and repairs. The lighter was a foreign vessel, owned in the state of New Jersey. By the statute of the state of New Jersey a lien is given, which continues until the debt is paid. Prior to August, 1888, the libelants Jones and Whitmill had a lien upon four different lighters, owned by one Havens, for different bills, incurred at different times, and amounting in all to some $700 or $800. On the 8th of August, 1888, Havens and Jones and Whitmill entered into an agreement for the compromise of these debts, and accordingly Jones and Whitmill signed an agreement to Havens in the following words:

"NEW YORK, August 9, 1888.

"In consideration of the payment of $500 as follows: $100 in the months of August, September, October, November, and December,—we do hereby agree to release the said Silas F. Havens, and also the lighters Carrie, Half Moon, Success, and Alert, from any such claim we have on the above to date.

[Signed] "GEORGE T. JONES.

Witnessed: "THOMAS T. COSTIGAN."

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

Thereafter Havens paid, on account of this agreement, on August 1st, $50; on August 31st, $50; on October 8th, $50; October 10th, $50,—making in all, $200. In February, 1890, these lighters were libeled by various lienors, and then Jones and Whitmill filed a libel against the Half Moon, and also against the Carrie, to enforce lien for the amount of the repairs done by them, respectively. In this action of Jones and Whitmill one of the said lienors appeared to defend, and filed his answer denying that Jones and Whitmill had any lien by reason of the agreement of August 9, 1888, between Jones and Whitmill and Havens, above set forth. The contention of these intervenors is that Jones and Whitmill by that agreement accepted the personal responsibility of Havens for their debts, and waived any lien upon the vessels mentioned therein. The question thus raised for decision is whether the agreement of August 9th, as set forth, was an abandonment of any lien Jones and Whitmill may have then had against the lighter Half Moon. In my opinion, that agreement was, in legal effect, an abandonment of the lien, for the reason that after the execution of the agreement, and certainly after the receipt of $200 on account of that agreement, it became impossible, by reason of the terms of the agreement, to designate any definite sum constituting a subsisting lien upon any particular one of the vessels named. The intention of the parties must have been to look to the personal responsibility of Havens, and not to the Half Moon, for they entered into an agreement which made it impossible thereafter to state any sum for which the lighter Half Moon was liable. This intention is confirmed by the acts of Jones and Whitmill subsequent to the agreement, for, although they made frequent demands upon Havens for payment of the debt after the agreement of 1888, they took no proceeding against the lighters until they were seized in other actions, some two years and eight months after the bill was incurred, and one year and six months after the agreement was signed, and eight months after the lighters had been transferred, with the knowledge of Jones, to Thomas T. Costigan, who witnessed the execution of the agreement of 1888. There must therefore be a decree dismissing the libel, with costs.